Filed 12/3/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>UNITED STATES FIRE INSURANCE COMPANY,<br><br>    Defendant and Appellant. | F070771<br><br>(Super. Ct. No. VCU257707)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  James W. Hollman and Gary L. Paden, Judges.[†]

Jefferson T. Stamp for Defendant and Appellant.

Kathleen Bales-Lange, County Counsel, and Jennifer D. McNichols, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[†]    Judge Hollman denied appellant's extension motion; Judge Paden denied appellant's motion to set aside summary judgment.

In this bail bond case, appellant United States Fire Insurance Company (Surety) appeals from a summary judgment entered against it on a forfeited bail bond of $25,000. Surety claims the summary judgment was premature, and hence improper, because it was entered while Surety's motion for an extension of time under Penal Code section 1305.4 was pending.[1] According to Surety, the improper summary judgment was *voidable* and should have been set aside pursuant to Surety's timely request for that relief in the trial court. The trial court disagreed and left the summary judgment intact because it concluded that, at the time summary judgment was entered, Surety had already used all of its 180-day extension period available under section 1305.4 as a result of a previously granted extension. In reaching that conclusion, the trial court measured the previously granted extension from the end of the original 185-day exoneration period.[2] Surety contends that the trial court erred because, under the plain wording of the statute, an extension of time under section 1305.4 is measured from the date of the trial court's *order* granting the motion.[3] If measured in that way, Surety alleges it had additional time available under the statute as a potential basis for the trial court to grant a further extension, and therefore summary judgment should not have been entered while Surety's motion was pending. We agree with Surety on each of these points. Accordingly, we reverse and remand the matter to the trial court with instructions to vacate the summary

[1] The summary judgment referred to herein was entered under a statutory process for entering a judgment against a surety on a forfeited bail bond set forth at Penal Code section 1306, subdivision (a). It should not to be confused with a motion for summary judgment under Code of Civil Procedure section 437c. Unless otherwise indicated, all further statutory references are to the Penal Code.

[2] As more fully described below, the exoneration period is the initial 185-day period after notice of forfeiture of bail is served on the surety. The exoneration period may be extended up to 180 days pursuant to a motion for extension of time under section 1305.4.

[3] This issue is presently before the Supreme Court in *People v. Financial Casualty & Surety, Inc.* (2015) 239 Cal.App.4th 440, review granted October 15, 2015, S229446.

judgment and, for additional reasons explained below, to enter an order exonerating the bond.

## FACTS AND PROCEDURAL HISTORY

On August 1, 2013, Surety, acting through a bail agent, posted a bail bond for criminal defendant, Jose Luis Hernandez-Guzman. The bail bond was in the amount of $25,000, and provided that the above named criminal defendant would appear on August 27, 2013, to answer the criminal charges filed against him in Tulare County Superior Court. On August 27, 2013, Hernandez-Guzman failed to appear in court as required, and the trial court declared the forfeiture of bail in open court. On August 28, 2013, a "NOTICE OF ORDER FORFEITING BAIL" (notice of forfeiture) was filed by the court clerk and served by mail on Surety.

In accordance with applicable statutes, unless an order forfeiting bail is set aside within 180 days from the date of service of the notice of forfeiture, plus an additional five days for service by mail (i.e., 185 days in all), summary judgment will be entered against the surety in the amount of the bond. (§§ 1305, subds. (b) & (c), 1306, subd. (a).) We refer to this 185-day period as the exoneration period. The exoneration period may be extended by the trial court pursuant to a motion under section 1305.4, which, upon a showing of good cause, permits the court to order an extension "to a time not exceeding 180 days from its order."

On February 28, 2014, before the exoneration period expired, Surety filed a motion to extend the period pursuant to section 1305.4. This was Surety's first motion for an extension. On March 4, 2014, the County of Tulare (the County), on behalf of the People of the State of California, filed a notice of nonopposition to the extension motion. The County recommended that the extension be 90 days instead of 180 days, but otherwise did not oppose the requested extension. The County's notice of nonopposition advised the trial court that "The date set for the extension must relate back in time to the end of the initial 185 day period …."

3.

On March 25, 2014, the trial court issued its order granting the motion for an extension. The trial court's order stated: "[T]he Motion by Surety to extend the 180 day appearance period pursuant to … Section 1305.4 is hereby GRANTED. [¶] The 180 day appearance period is extended to 8/28/14." Thus, the trial court clearly assumed that granting the entire 180-day extension would permit an extension only to August 28, 2014. We note that the date of August 28, 2014, was not randomly selected by the trial court. It represented the sum of the original 185-day exoneration period, plus an extension of 180 days contiguous with the exoneration period, for a total of 365 days. Thus, it is clear that the trial court computed the extension of time from the end of the original exoneration period, and not from its order granting the extension. Surety points out that August 28, 2014, was in reality only 156 days from the trial court's *order* granting the extension (i.e., March 25, 2014), which in Surety's reading of section 1305.4, meant that on August 28, 2014, 24 days still remained of the 180-day statutory maximum extension period.

On August 28, 2014, Surety filed a second extension motion under section 1305.4. The motion was set for hearing on September 25, 2014. In the extension motion, Surety argued there were 24 days of available extension time remaining that could be granted.

On September 3, 2014, the County filed an "OBJECTION TO MOTION TO EXTEND TIME ON BAIL BOND AND DEMAND FOR SUMMARY JUDGMENT TO BE ENTERED .…" The County argued that Surety had already received the maximum amount of time the law allows—i.e., the original 185-day exoneration period plus a 180-day extension, for a full 365 days—therefore, no further extensions were permissible. Accordingly, the County requested that summary judgment be "immediately entered" against Surety for the amount of the bail bond.

On September 3, 2014, the same day the County filed its demand for immediate entry of summary judgment and while Surety's extension motion was pending, the trial

4.

court (Judge Paden) entered summary judgment under section 1306 against Surety in the amount of $25,000 on the bail bond.

Even though summary judgment had already been entered, a hearing was held on September 25, 2014, on Surety's motion for an extension. The hearing was before a different judge, Judge Hollman, who was unaware that summary judgment had previously been entered. Surety's counsel asked for a continuance of the extension motion so that he would have an opportunity to first move to set aside the summary judgment, since the summary judgment was "clearly premature because our motion was pending." The trial court was unwilling to continue the hearing of the extension motion because it was not inclined to grant the motion in any event. The trial court (Judge Hollman) explained: "The Court thinks the statute is clear that Surety gets 365 days' extension and that is all that they get. Based on that, the Court's going to deny the motion." The trial court's minute order reflects that it denied the extension motion on September 25, 2014.

On October 1, 2014, Surety filed its motion to set aside the summary judgment. In the motion to set aside, Surety primarily argued that the summary judgment was prematurely entered and, therefore, voidable, because it was entered while its motion to extend was pending. Surety further argued that it was improper for one department of the superior court to rule on a summary judgment request, while another department had a motion to extend pending in the same case. Finally, Surety claimed it did not receive a fair hearing on its motion to extend, because it was argued after summary judgment had already been granted and, therefore, it was denied due process.

On October 14, 2014, the County filed its opposition to the motion to set aside summary judgment. The County's opposition emphasized its position that, when summary judgment was entered, Surety was not entitled to any further extension of time as a matter law. The County argued: "[T]he Courts of this State have consistently confirmed that the extension runs from the end of the 180 day time period, not from the

5.

date [of] the order." Relying on cases such as *People v. Taylor Billingslea Bail Bonds* (1999) 74 Cal.App.4th 1193 (*Taylor Billingslea*), the County stressed that the maximum time allowed to return a defendant to custody is 365 days. Thus, the County argued the second extension motion was "void on its face" and could not be granted because Surety "had already exhausted its allowed extension time pursuant to the [Penal] Code."

On October 15, 2014, Surety's agents brought Hernandez-Guzman back into the official custody of law enforcement in Orange County.

On October 23, 2014, Surety filed its reply papers in support of its motion to set aside the summary judgment. In its reply, Surety reiterated its argument that summary judgment was entered prematurely and should be set aside in light of the fact that its extension motion was pending. Moreover, Surety's reply pointed out that it had 24 days remaining of the available extension period under section 1305.4, because the statutory language clearly provides that extensions are measured from the court's order. Surety further argued that its motion to extend was a timely and proper motion that was within the trial court's discretion to grant, and said motion could not be described as void on its face or disregarded. As additional relief, Surety's reply papers also requested that the trial court order exoneration of the bond under section 1305, subdivision (c)(3), based on the recent surrender and arrest of Hernandez-Guzman.

On October 30, 2014, the trial court denied the motion to set aside the summary judgment. The trial court reasoned that when summary judgment was entered on September 3, 2014, all of Surety's time had already expired and Surety had no basis to request a further extension as a matter of law. The trial court explained further: "The Bail Agent/Surety contends that this 180-day extension begins at the time of the Court's order of March 25, 2014 that granted this extension. But California law is clear that any 180-day extension granted under §1305.4 runs from the expiration of the original 180-day period following service of the Notice of Forfeiture …." Accordingly, the trial court concluded it had "properly granted summary judgment" on September 3, 2014.

On November 10, 2014, Surety timely filed its notice of appeal. Surety appeals from the summary judgment and from the trial court's order denying Surety's motion to set aside the summary judgment.

## DISCUSSION

## I. Standard of Review

"The statutory scheme governing bail forfeitures is found in … section 1305 et seq. These provisions must be carefully followed by the trial court, or its acts will be considered without or in excess of its jurisdiction. [Citation.]" (*People v. Aegis Security Ins. Co.* (2005) 130 Cal.App.4th 1071, 1074 (*Aegis*).) Where the bail statutes "'"require[] a court to exercise its jurisdiction in a particular manner, to follow a particular procedure, or to perform subject to certain limitations, an act beyond those limits is in excess of its jurisdiction. [Citations.]" [Citation.]' [Citation.]" (*People v. American Contractors Indemnity Co.* (2015) 238 Cal.App.4th 1041, 1044 (*American Contractors*); accord, *People v. Topa Ins. Co.* (1995) 32 Cal.App.4th 296, 300.) Because of the harsh results of a forfeiture and the jurisdictional nature of statutory compliance, appellate courts carefully review the record to ensure strict statutory compliance. (*People v. Bankers Ins. Co.* (2009) 171 Cal.App.4th 1529, 1532.) When the facts are undisputed and only legal issues are involved, we conduct an independent review. (*People v. International Fidelity Ins. Co.* (2012) 204 Cal.App.4th 588, 592.)

Questions of statutory construction are reviewed de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.) In interpreting the bail forfeiture statutes, we keep in mind that the law traditionally disfavors forfeitures and, therefore, such provisions are strictly construed in favor of the surety. (*Aegis*, *supra*, 130 Cal.App.4th at p. 1074.) "[T]he Penal Code sections governing forfeiture of bail bonds must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture. [Citation.]" (*County of Los Angeles v. Williamsburg National Ins. Co.* (2015) 235 Cal.App.4th 944, 950 (*Williamsburg*).) This standard of strict construction "'compels us

7.

to protect the surety, and more importantly the individual citizens who pledge to the surety their property on behalf of persons seeking release from custody, in order to obtain the corporate bond.' [Citation.]" (*American Contractors*, *supra*, 238 Cal.App.4th at p. 1044.)

## II.    The Statutory Framework

When a defendant released on bail fails to appear as required, the trial court must declare a forfeiture of the bail bond in open court. (§ 1305, subd. (a).) Within 30 days of the forfeiture, a notice of forfeiture is served by the court clerk. If the amount of the bond exceeds $400, the notice of forfeiture must be served by mail on the surety. (§ 1305, subd. (b).) Thereafter, the surety has a 180-day period, plus five days for service by mail (i.e., 185 days), within which to obtain relief from the forfeiture on certain statutory grounds (§ 1305, subds. (b)–(e); *People v. Granite State Insurance Co*. (2003) 114 Cal.App.4th 758, 762 (*Granite State*)), including that the criminal defendant has appeared in court or has been surrendered into custody by the bail agent within the 185-day period. (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 658; *Aegis*, *supra*, 130 Cal.App.4th at p. 1074.) This 185-day period is commonly known as the exoneration period or the appearance period. (*People v. Bankers Ins. Co.* (2010) 182 Cal.App.4th 1377, 1380.) We refer to it herein as the "exoneration period," but we preserve the terminology of "appearance period" when it appears that way in language we quote from other opinions.

Pursuant to section 1305.4, the trial court may extend the exoneration period up to 180 days upon the filing of a motion supported by a showing of good cause. Regarding the length of the permissible extension, section 1305.4 specifies that "[t]he court … may order the period extended to a time not exceeding 180 days *from its order*." (Italics added.) A 1999 amendment to section 1305.4, effective on January 1, 2000, provided that motions to extend "may be filed and calendared as provided in subdivision (i) [now subdivision (j)] of Section 1305." (Stats. 1999, ch. 570, § 3; see Stats. 2012, ch. 129, § 1

8.

[former subd. (i) relettered as subd. (j)].) Under the terms of section 1305, subdivision (j), "[a] motion filed in a timely manner within the 180-day period may be heard within 30 days of the expiration of the 180-day period." Accordingly, a motion to obtain an extension of the exoneration period that is timely filed within the exoneration period may be heard within 30 days after the expiration of that period.[4] (*Ibid.*; § 1305.4 [incorporating § 1305, subd. (j)]; *Williamsburg*, *supra*, 235 Cal.App.4th at p. 951, fn. 7 [1999 amendment "permitted courts to hear and decide motions to extend after expiration of the exoneration period"]; *Aegis*, *supra*, 130 Cal.App.4th at p. 1075.) In addition, for good cause shown, the trial court may extend the 30-day period for the hearing of the extension motion. (§ 1305, subd. (j).)

Under section 1306, subdivision (a), when "the period of time specified in Section 1305 has elapsed without the forfeiture having been set aside, the court which has declared the forfeiture shall enter a summary judgment" against the surety in the amount of the forfeited bail bond plus costs. Section 1306, subdivision (c), sets forth the 90-day time frame within which the summary judgment must be entered: "If, because of the failure of any court to promptly perform the duties enjoined upon it pursuant to this section, summary judgment is not entered within 90 days after the date upon which it may first be entered, the right to do so expires and the bail is exonerated."

## III. Summary Judgment was Prematurely Entered

Surety contends the summary judgment was prematurely entered in violation of section 1306, subdivision (a), and should have been set aside by the trial court. We agree.

Where a summary judgment is prematurely entered under the bail forfeiture statutes (§ 1305 et seq.), the judgment is *voidable* (not void) and the surety may, as here,

---

[4] The same rule set forth in section 1305, subdivision (j), allowing a timely filed motion to be heard within 30 days after the expiration of the exoneration period *also* applies to a surety's motion to vacate the forfeiture. (*Granite State*, *supra*, 114 Cal.App.4th at p. 762.)

move to have it set aside in the trial court by a timely motion or challenge it by direct appeal. (*People v. American Contractors Indemnity Co.*, *supra*, 33 Cal.4th at pp. 663–664.)[5] The most obvious example of such prematurity is where the summary judgment was entered against the surety before the exoneration period expired. (*Id.* at pp. 657–665 [summary judgment entered on 185th day, the last day of exoneration period, was premature and therefore voidable].)[6] Less obvious, but of particular importance in the present case, is that a summary judgment may be premature if it was entered while a timely motion for certain relief was pending under the bail forfeiture statutes. (*Aegis*, *supra*, 130 Cal.App.4th at p. 1075; *Granite State*, *supra*, 114 Cal.App.4th at pp. 764–765.)

In *Granite State*, the issue on appeal was whether the provision allowing a motion to vacate forfeiture to be heard *after* the expiration of the exoneration period (§ 1305, former subd. (i) [now subd. (j)]) had "the effect of also extending the period (provided by § 1306) within which the court may enter summary judgment." We concluded that it did have that effect. (*Granite State*, *supra*, 114 Cal.App.4th at pp. 760–761.) In that case, a prior extension of the exoneration period had been granted to November 13, 2001. On

---

[5] The Supreme Court explained how a voidable judgment may be challenged: "When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.] That is, its act or judgment is valid until it is set aside, and a party may be precluded from setting its aside by 'principles of estoppel, disfavor of collateral attack or res judicata.' [Citation.] Errors which are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final unless 'unusual circumstances were present which prevented an earlier and more appropriate attack.' [Citations.]" (*People v. American Contractors Indemnity Co.*, *supra*, 33 Cal.4th at p. 661.)

[6] In *People v. American Contractors Indemnity Co.*, the voidable judgment was not set aside because the surety had failed to bring a timely motion for relief in the trial court or appeal from the judgment. Rather, nearly one year after the judgment became final, the surety challenged it on the theory that it was a void judgment. The Supreme Court held that the judgment was voidable, not void, and refused to set it aside because a "collateral attack on a voidable but final judgment is not available absent unusual circumstances, not present here ...." (*People v. American Contractors Indemnity Co.*, *supra*, 33 Cal.4th at p. 657.)

November 8, 2001, the surety filed a timely motion to vacate forfeiture, and scheduled the hearing for December 12, 2001. The trial court continued the motion several times based on good cause, and the motion was ultimately heard and denied on April 24, 2002. Within 90 days after denial of the motion, the trial court entered summary judgment against the surety pursuant to section 1306, subdivision (a). The surety appealed on the ground that summary judgment had to be entered within 90 days after expiration of the extended exoneration period (i.e., 90 days after Nov. 13, 2001), not 90 days after the denial of the motion and, therefore, the summary judgment was entered too late. (*Granite State*, *supra*, at pp. 761–762.) Thus, the appeal required us "to determine the date upon which summary judgment 'may first be entered' when … the surety has filed a motion to vacate the forfeiture before the expiration of the exoneration period, but the motion is decided after the expiration of that period." (*Id*. at p. 764.) Rejecting the surety's argument that summary judgment could be entered while the motion was pending, we held that the filing of the timely motion to vacate forfeiture during the exoneration period postponed the first day in which summary judgment may be entered to the day after the motion is decided. (*Ibid*.) Specifically, we concluded that "where a surety timely files a motion to vacate forfeiture prior to the expiration of the exoneration period, and the motion is decided after expiration of that period as provided under section 1305, [former] subdivision (i) [now subdivision (j)], the court's power to enter summary judgment begins on the day following denial of the motion and expires 90 days later." (*Granite State*, *supra*, at p. 770.)

Similarly, in *Aegis*, *supra*, 130 Cal.App.4th 1071, the Court of Appeal held that a timely motion to extend the exoneration period under section 1305.4 postpones the first day summary judgment may be entered. In that case, "the surety filed its motion to extend on the last day of the appearance period; thus it was timely. Before it could be heard, however, the trial court entered summary judgment on the bond." (*Aegis*, *supra*, at p. 1075, fn. omitted.) The question on appeal was whether the pending motion "extended

11.

the appearance period until it could be heard, thus postponing 'the date upon which [summary judgment] may first be entered.' [Citation.]" (*Ibid.*)**7** In answering that question in the affirmative, the Court of Appeal relied on *Granite State*, explaining: "The logic of *Granite State* applies squarely to the situation before us. If Aegis's statutorily authorized motion to extend the appearance period did not postpone the date on which the trial court could first enter summary judgment, the motion would be futile. Such a construction of section 1305.4 would contravene the mandate to strictly construe the bail forfeiture statutes in favor of the surety. [Citation.] Accordingly, we conclude the summary judgment was prematurely entered." (*Aegis*, *supra*, at p. 1076.)

Here, likewise, Surety filed its second extension motion on August 28, 2014, which was the last day of the previously extended exoneration period. Thus, Surety's motion was timely filed. Just as in *Aegis*, the summary judgment was entered before the hearing on the motion for an extension, while said motion was pending. Consequently, the summary judgment entered in this matter on September 3, 2014, was prematurely and improperly entered in violation of section 1306, subdivision (a). As such, the summary judgment was (and is) *voidable* and subject to being set aside upon a timely challenge in the trial court and/or a timely appeal from the summary judgment. (*People v. American Contractors Indemnity Co.*, *supra*, 33 Cal.4th at pp. 663–664.)**8** Surety is correct that the trial court not only erred by entering summary judgment against Surety while the timely extension motion was pending, but it further erred by failing to set aside the summary judgment once Surety pointed out the court's mistake in a timely motion for relief. By its

---

**7** For purposes of the present appeal, we do not believe it is necessary to decide that the effect of the pending motion "extended the appearance period." (*Aegis*, *supra*, 130 Cal.App.4th at p. 1075.) It is sufficient for our purposes to recognize that the right to enter summary judgment (i.e., the 90-day period) is *postponed* by the pending motion.

**8** Here, it is clear that Surety not only timely moved in the trial court to set aside the summary judgment, but also directly appealed from the summary judgment before it became final.

12.

failure to comply with statutory commands and procedures designed to protect the surety, which must be strictly followed to avoid needless forfeiture, the trial court acted in excess of its jurisdiction. On this record, we conclude reversal is warranted. (See *Williamsburg*, *supra*, 235 Cal.App.4th at p. 955 [where motion for extension under § 1305.4 peremptorily denied without a hearing, summary judgment set aside; no showing of prejudice needed since court violated statutory commands designed for surety's protection].)[9]

## IV. Section 1305.4 Extension is Measured from Date of Court's Order

In an effort to show that the September 3, 2014 summary judgment was not entered prematurely, the County argues (as it did in the trial court) that the 180-day extension period under section 1305.4 had already expired when summary judgment was entered. In its denial of Surety's motion to set aside the summary judgment, the trial court agreed with and adopted the County's interpretation of section 1305.4. As noted above, the County's position is based on its assumption that an extension of time granted under section 1305.4 is measured from the end of the exoneration period. When measured in that way, the maximum time allowed (including extensions of time) would never exceed 365 days from the service of notice of forfeiture. That is, the sum of the 185-day exoneration period, plus a maximum extension of 180 days (measured from the end of the exoneration period), is a total of 365 days. Here, the notice of forfeiture was

---

[9]     Surety argues there is an *additional* ground upon which the trial court should have set aside the summary judgment: namely, that while the motion for an extension was pending in one department of the superior court (i.e., before Judge Hollman), summary judgment was entered by another department of the superior court (by Judge Paden). Arguably, Judge Paden's act of entering summary judgment constituted an interference with the power of Judge Hollman to determine the extension motion. According to this theory, the summary judgment must be set aside because it violated the other department's priority of jurisdiction to hear and decide the extension motion. (See, e.g., *Williams v. Superior Court* (1939) 14 Cal.2d 656, 662; *People v. Bachelor* (1976) 56 Cal.App.3d 278, 284; *Ford v. Superior Court* (1986) 188 Cal.App.3d 737, 741.) We find it unnecessary to reach this additional ground for setting aside the summary judgment.

13.

served on August 28, 2013, and, therefore, under the County's method of calculation, the 180-day extension granted by the trial court in Surety's first extension motion would have ended on August 28, 2014.

On appeal, Surety contends the County's (and the trial court's) method of measuring the extension period under section 1305.4 is erroneous because the statute explicitly states that when an extension is granted by the court, the time period of the extension is measured "from its order." The trial court's order granting the first extension motion was made on March 25, 2014. If Surety is right that the extension period is measured from the date of the court's order granting the motion, it would mean that when Surety filed its second extension motion on August 28, 2014, more of the 180-day maximum extension time (i.e., 24 days) was still available and could have been granted by the trial court. Consequently, if Surety's position is correct, it would also confirm that the trial court entered summary judgment prematurely, since in that case the pending motion was viable and within the court's proper discretion to grant. As explained below, we conclude that Surety's view is the correct one.

The precise issue we are called upon to decide is whether an extension under section 1305.4 is measured from the date of the court's order, or from the end of the exoneration period. The issue presents a question of law concerning statutory interpretation. "'The general principles that guide interpretation of a statutory scheme are well established. When assigned the task of statutory interpretation, we are generally guided by the express words of the statute. "'Our function is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.] To ascertain such intent, courts turn first to the words of the statute itself [citation], and seek to give the words employed by the Legislature their usual and ordinary meaning. [Citation.] When interpreting statutory language, we may neither insert language which has been omitted nor ignore language which has been inserted. [Citation.] The language must be construed in the context of the statutory framework as a whole, keeping in mind the

14.

policies and purposes of the statute [citation], and where possible the language should be read so as to conform to the spirit of the enactment.  [Citation.]"""" (*Granite State*, *supra*, 114 Cal.App.4th at p. 763.)

Additionally, in approaching the task before us, we keep in mind that "the Penal Code sections governing forfeiture of bail bonds must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture.  [Citation.]"  (*Williamsburg*, *supra*, 235 Cal.App.4th at p. 950.)  Thus, to the extent there is ambiguity in the statutory language, we would generally construe the provision under consideration in favor of the surety to avoid forfeiture.  (*Id.* at pp. 949–950, 954; *Aegis*, *supra*, 130 Cal.App.4th at p. 1074.)  Of course, "[i]f the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs."  (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.)

The question before us is not difficult to resolve because it is clearly answered by the explicit language of the statute.  The relevant wording of section 1305.4 states:  "The court, upon a hearing and a showing of good cause, may order the period extended to a time not exceeding 180 days *from its order*."  (Italics added.)  We fail to see how the words "from its order" may reasonably be construed in any other manner than that the extension period is measured from the date the court makes its order.[10]  Again, the words "from its order" are clear and unambiguous, and we must assume the Legislature meant what it said.  As is stated in Code of Civil Procedure section 1858, our task in construing a statute is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or omit what has been inserted"; and further, we must, if possible, adopt an interpretation that "will give effect to all" of the statute's provisions.  The view that the extension is measured from the end of the 185-day

---

[10]     This conclusion is also consistent with the rule that the bail bond statutes are strictly construed in favor of the surety and against forfeiture.

15.

exoneration period would have us disregard the actual words of the statute, which states that it is measured from the court's order. This we may not do. Moreover, such a view cannot be harmonized with the statutory provision referenced by section 1305.4—namely, section 1305, subdivision (j)—that not only allows a section 1305.4 motion to be heard within 30 days after the exoneration period expires, but allows that hearing to be continued one or more times on a showing of good cause. (§§ 1305.4, 1305, subd. (j).)

The clarity of the statute on this particular point is, in our opinion, why the Supreme Court (in a decision several years after the 1999 amendment of § 1305.4) included the following statement in a synopsis of the statutory law relating to bail bond forfeiture: "The trial court may also toll the appearance period under certain circumstances, *or extend the period by no more than 180 days from the date the trial court orders the extension*, provided that the surety files its motion before the original 185-day appearance period expires and demonstrates good cause for the extension. (§§ 1305, subds. (e), ([j]), 1305.4.)" (*People v. American Contractors Indemnity Co.*, *supra*, 33 Cal.4th at p. 658, italics added.) Although the italicized statement was dicta, since it was not part of the court's analysis in reaching the decision in that case, we may not lightly disregard it. (See *Hubbard v. Superior Court* (1997) 66 Cal.App.4th 1163, 1168–1169.) We think the Supreme Court's statement about how a section 1305.4 extension would be measured, made in the context of setting forth the salient features of the statutory framework, is strongly indicative of the fact that the statutory wording is clear and explicit in providing that an extension is measured from the court's order. As such, the Supreme Court's statement confirms what we have said. (See *People v. Accredited Surety Casualty Co*. (2014) 230 Cal.App.4th 548, 557 [similarly noting that, under § 1305.4, "[t]he 185-day appearance period may be extended for up to 180 days from the date of the order upon a showing of good cause"].)

In taking a contrary position, the County primarily relies on the case of *Taylor Billingslea*, *supra*, 74 Cal.App.4th 1193. In that case, the surety, after receiving several

16.

smaller extensions that were still within 180 days after the end of the exoneration period, requested one additional extension that would go beyond that point. The trial court denied the motion because it believed it had no authority to grant a further extension. (*Id*. at p. 1197.) On appeal, the surety argued that section 1305.4 should be read to permit the trial court to grant an unlimited series of extensions as long as good cause is shown and no single extension is longer than 180 days. (*Taylor Billingslea*, *supra*, at p. 1198.) The Court of Appeal noted, with respect to that particular issue, the language of section 1305.4 was "somewhat ambiguous" because it stated that the period may be extended 180 days from "'*its order*.'" (*Taylor Billingslea*, *supra*, at p. 1198.) The specific question of statutory interpretation was framed by the Court of Appeal as follows: "Does 'its order' mean the original order extending the period so that the total of all extensions permitted under section 1305.4 cannot exceed 180 days, or does 'its order' mean the order issued in response to each request for extensions which could result in limitless extensions of time as long as 'good cause' is shown and no single extension exceeds 180 days?" (*Ibid*.) It is clear that the Court of Appeal adopted the first option, holding that a surety could only receive up to 180 days, not multiple 180-day extensions. This limited aspect of the *Taylor Billingslea* decision is not in dispute in the present appeal.[11] What *is* in dispute, however, is how the Court of Appeal went on to describe the manner in which the singular 180-day maximum extension period would be measured. On that latter point, the Court of Appeal held: "[W]e are of the opinion that the Legislature intended section 1305.4 to allow an extension of no more than 180 days *past the 180-day period set forth in section 1305*." (*Taylor Billingslea*, *supra*, at p. 1199, italics added.)

---

[11]     In *Granite State*, we agreed that "the exoneration period can only be extended an additional 180 days *once*." (*Granite State*, *supra*, 114 Cal.App.4th at p. 768, citing *Taylor Billingslea*, *supra*, 74 Cal.App.4th at p. 1199, italics added.)

As correctly pointed out by Surety, the problem with relying on *Taylor Billingslea* is that it was decided prior to the effective date of the 1999 amendment to section 1305.4, which added new language allowing extension motions to be heard within 30 days after the expiration of the exoneration period. (Stats. 1999, ch. 570, § 3; see *Williamsburg*, *supra*, 235 Cal.App.4th at p. 951, fn. 7 [1999 amendment "permitted courts to hear and decide motions to extend after expiration of the exoneration period"].) After the 1999 amendment took effect on January 1, 2000, the newly worded section 1305.4 provided that a motion for extension "may be filed and calendared as provided in subdivision [(j)] of Section 1305." (See *Williamsburg*, *supra*, at p. 951, fn. 7; see also *People v. National Automobile & Casualty Ins. Co*. (2000) 82 Cal.App.4th 120, 124, fn. 3 [effective date of 1999 amendment was Jan. 1, 2000].) As noted in our discussion above, former subdivision (i) of section 1305, subsequently relettered as subdivision (j), states that "[a] motion filed in a timely manner within the 180-day period may be heard within 30 days of the expiration of the 180-day period," and also allows the court to extend the 30-day period for hearing the motion upon a showing of good cause. (Cf. § 1305.4.)

In light of the fact that *Taylor Billingslea* was decided prior to the 1999 amendment to section 1305.4, it is not surprising that the Court of Appeal in that case took it for granted that the extension period would have to be measured from the end of the exoneration period, or from a date no later than that because, at the time *Taylor Billingslea* was decided, extension motions were generally heard and decided before the end of the exoneration period in order to preserve the trial court's jurisdiction. (See *People v. National Automobile & Casualty Ins. Co*., *supra*, 82 Cal.App.4th at pp. 124–125; see also *People v. Indiana Lumbermens Mutual Ins. Co*. (2010) 49 Cal.4th 301, 311–312.) The 1999 amendment changed all that by providing a 30-day grace period for hearing an extension motion, thereby allowing the motions to be heard within 30 days after the expiration of the exoneration period. As argued by Surety herein: "Since hearings on extension motions may now be heard after the initial 180-days expires, and

18.

since the plain language of Section 1305.4 provides that extensions are measured from the date of the extension order, the *Taylor Billingslea* interpretation limiting time to 'no more than 180 days past the 180 day period' is no longer applicable. The rule is simply inconsistent with the court's ability to hear extension motions after the 180-day period expires under subdivision (j) [of section 1305]." We agree with Surety's argument.

A recent Court of Appeal decision has reached the same conclusion. In *Williamsburg*, *supra*, 235 Cal.App.4th 944, the County of Los Angeles asserted the same argument as the County has asserted in the present case. The Second District Court of Appeal flatly rejected that argument, explaining as follows:

> "At oral argument, County argued that language in *Taylor Billingslea*, *supra*, 74 Cal.App.4th at page 1199 requires that we count a section 1305.4 extension from the expiration of the initial 185-day exoneration period rather than from the date the court grants the extension. County further argued that *Taylor Billingslea* undercut the 1999 amendment to section 1305.4, which permitted courts to hear and decide motions to extend after expiration of the exoneration period.… [¶] We disagree with this argument, which strains credulity. *Taylor Billingslea* was decided before the California Legislature enacted the 1999 amendment. We fail to see how a case decided before a statutory amendment became effective can provide any guidance on its interpretation. [¶] We are bound by the language of section 1305.4, which states that the court may order the exoneration 'period extended to a time not exceeding 180 days *from its order*.' (Italics added.) This plain text clearly states that any extension runs from the date the court issues an order granting an extension. (See [*People v.*] *American Contractors* [*Indemnity Co.*], *supra*, 33 Cal.4th [at p. ] 658 ['The trial court may … extend the period by no more than 180 days *from the date the trial court orders the extension*, provided that the surety files its motion before the original 185-day appearance period expires and demonstrates good cause for the extension. [Citations.]' (italics added)].) [¶] Here the court ordered Williamsburg's original exoneration period extended on February 1, 2013. We count Williamsburg's extension from that date. On July 22, 2013, the date Williamsburg filed its motion, 171 days had passed. Thus, the court could have extended the period for nine more days." (*Williamsburg*, *supra*, 235 Cal.App.4th at p. 951, fn. 7.)

We agree with the analysis and conclusion in *Williamsburg* and follow it here. In so doing, we recognize there is a split of authority on this issue because a number of appellate courts have continued to follow the approach set forth in *Taylor Billingslea*. (See, e.g., *People v. Accredited Surety & Casualty Co., Inc*. (2013) 220 Cal.App.4th 1137, 1147–1149; *People v. Bankers Ins. Co.*, *supra*, 182 Cal.App.4th at p. 1382.) We decline to follow these other decisions because, in our estimation, they have adhered to the conclusion in *Taylor Billingslea* without any meaningful consideration or analysis of the impact of the 1999 amendment on the statutory provision.

In conclusion, we reject the County's argument that the summary judgment was not premature because no further extension of time could have been granted by the trial court under section 1305.4. That argument fails because, as discussed above, the extension period under section 1305.4 is counted from the date of the order and, therefore, when Surety filed its second extension motion, more time was available for a further extension.

## V.  Exoneration of the Bond and Other Issues

Finally, Surety further claims that, on the record before us, the bond should be ordered exonerated. We discuss two particular arguments for exoneration raised by Surety. The first is based on Surety's assertion that the second extension motion should have been granted by the trial court on September 25, 2014, as a matter of law. If that relief had been granted, Surety argues that exoneration would be required because Hernandez-Guzman was returned to custody shortly thereafter. Surety's second argument for exoneration of the bond is based on the trial court's failure to enter a summary judgment within the 90-day window required by section 1306, subdivisions (a) and (c).

We begin with the initial argument for exoneration, focusing on the trial court's allegedly erroneous denial of Surety's second extension motion. The trial court conducted a hearing of that motion on September 25, 2014, even though summary

20.

judgment had already been entered on September 3, 2014. The extension motion was formally denied on the ground that, as of August 28, 2014, all of the available extension time under section 1305.4 had already been allotted or had expired. As we have explained above, the trial court's conclusion regarding available extension time was incorrect. When measured from the date of the trial court's order granting the first extension motion, an additional 24 days of extension time could have been granted by the trial court. Based on these facts, and on its purported showing of good cause to support an additional extension, Surety contends that the trial court should have granted Surety's motion and thereby extended the exoneration period an additional 24 days beyond September 25, 2014—i.e., *to October 19, 2014*. According to Surety, if this had been done the trial court would have been required to order the bond exonerated pursuant to section 1305, subdivision (c)(3), when the criminal defendant was returned to custody on October 15, 2014.

We note that the approach suggested by Surety assumes that if the second extension motion had been granted, the additional 24 days would run from the date of the order granting the second extension motion. In support of that assumption, Surety asserts that because the second extension motion was timely filed during the exoneration period (as previously extended), the gap of time from the expiration of the exoneration period until the determination of the second extension motion would not itself be counted as an extension of the exoneration period. In other words, as with the first extension, the second extension would be counted *from the court's order granting it* (§ 1305.4), with the only difference being that there would be less extension time available in the second motion.[12] Consistent with that argument, Surety notes there is authority for treating an

---

**12** The alternative would be to conclude that the remaining 24 days would be measured from the date the first extension was ordered, as though it were part of or contiguous with the original extension (i.e., expiring here 24 days after August 28, 2014), in which case the additional 24 days of extension time would have been used up before the scheduled hearing of the motion on September 25, 2014.

21.

expired exoneration period as effectively *reinstated* when a timely extension motion is subsequently granted.[13]  (*People v. Ranger Ins. Co*. (2007) 150 Cal.App.4th 638, 649 [discussing the reinstatement concept]; see e.g., *Granite State*, *supra*, 114 Cal.App.4th at p. 768 [distinguishing between postponement of the 90-day period and extension of the exoneration period].)  Further support for Surety's position is arguably reflected in the disposition ordered in *Williamsburg*, *supra*, 235 Cal.App.4th 944.  There, the Court of Appeal directed the trial court to hold a full hearing on the section 1305.4 motion following remand and, if the trial court were to grant the motion, it was to order the exoneration period extended by a maximum of nine days (i.e., the remainder of the 180-day period under § 1305.4) from the date of the trial court's order granting such motion. (*Williamsburg*, *supra*, at p. 956, fn. 14.)  Without deciding the issue at this time, we observe that Surety's position appears at first glance to be sound.

Having outlined the issues underlying Surety's initial argument for exoneration, we find it is unnecessary to decide them because, whether or not the approach suggested by Surety above is correct, it is clear that the bond should be exonerated on *another* ground—namely, under section 1306, subdivision (c).  As we have held above, summary judgment was entered prematurely, that is, before the time that it could be entered under section 1306, subdivision (a).  That prematurity was brought to the trial court's attention on a timely basis, but the trial court refused to correct the improperly entered summary judgment.  Section 1306, subdivision (c), provides:  "If, because of the failure of any court to promptly perform the duties enjoined upon it pursuant to this section, summary judgment is not entered *within 90 days after* the date upon which it may first be entered, the right to do so expires and the bail is exonerated."  (Italics added.)  Here, because the

---

**13**    Allegedly, under this reinstatement concept, at the end of the previously extended exoneration period, the exoneration period would cease, but when a timely motion for an extension is subsequently granted, the exoneration period would be *reinstated* and *extended* by the amount of time ordered from the date of that order.

22.

pending extension motion postponed the time in which summary judgment could be entered, the first day on which summary judgment could have been entered was September 26, 2014, the day following the denial of Surety's extension motion on September 25, 2014. That did not occur. Summary judgment was not entered within 90 days after September 26, 2014. Although a premature summary judgment was entered on September 3, 2014, we have held that it was entered in excess of the court's jurisdiction, was voidable and should have been set aside by the trial court. Moreover, in this case there were no grounds for estoppel asserted by the County or otherwise indicated in the record that would keep us from setting aside the premature summary judgment. In conclusion, because a proper summary judgment was not entered within 90 days after the date upon which it first could be entered (§ 1306, subd. (c)), the bond must be ordered exonerated.

## DISPOSITION

The summary judgment is reversed. The matter is remanded with directions that the trial court enter a new order setting aside the summary judgment and exonerating the bond. Costs on appeal are awarded to Surety.

_____
KANE, Acting P.J.

WE CONCUR:


_____
POOCHIGIAN, J.


_____
FRANSON, J.

23.