Filed 5/28/24  Huang v. Pabianova CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| FANG HUANG,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARIE PABIANOVA,<br><br>    Defendant and Appellant. | B321951<br><br>(Los Angeles County Super. Ct. No. BD615033) |

APPEAL from an order of the Superior Court of Los Angeles County.  Michael R. Powell, Judge.  Affirmed.

Maria Pabianova, in pro. per.; and Holstrom, Block & Parke, and Ronald B. Funk for Defendant and Appellant.

Fang Huang, in pro. per., for Plaintiff and Respondent.

_____

This is the third time the parties, a former husband and wife, have come before us.  Following the dissolution of their marriage, the parties sought mutual restraining orders under the Domestic Violence Prevention Act (DVPA; Fam. Code, § 6200 et seq.[1]).  The trial court held a hearing on both requests that included live witness testimony presented over several days.  At the conclusion of the hearing, the court granted the former husband's request and denied the former wife's request for a domestic violence restraining order (DVRO).  The former wife contends the order must be reversed because the court failed to comply with section 6305 and conducted the hearing in violation of her due process rights.  We affirm the order.

## FACTS AND PROCEDURAL BACKGROUND

### A.    Marriage and Dissolution

Fang Huang (husband) and Marie Pabianova (wife) married in January 2010.  They separated in October 2014, and the judgment of dissolution ending their marriage was entered in January 2018.  They have two children—C. (born in 2010) and A. (born in 2012).

In their stipulated judgment of dissolution, wife and husband agreed to joint legal and physical custody of the children.

### B.    Earlier Proceedings and Existing DVRO Requests

In May 2021, the juvenile court dismissed a Welfare and Institutions Code section 300 petition against husband for insufficient evidence.  Wife acknowledged she was the reporting

---

[1] Statutory references are to the Family Code unless otherwise indicated.

party.  The petition alleged husband physically abused the children.

On November 18, 2021, a criminal protective order issued in August 2021 against husband as to his daughter A. was terminated.

On November 30, 2021, wife filed a request for a DVRO to protect herself against husband.  She described harassment and threats texted by husband in the middle of the night, prompting her to go to the hospital for chest pain and medical tests.

On December 10, 2021, husband filed a request for a DVRO to protect himself and his children against wife.  Husband asserted the children reported they had been forced by wife to make false allegations of physical and sexual abuse against him to authorities.

### C.    DVRO Proceedings

On January 27, 2022, husband appeared, represented by counsel and wife appeared, representing herself.  Wife objected to husband calling the children to testify.  The trial court decided to interview the children instead and asked the parties to submit questions for the court to ask.

Next, the trial court explained the parties were to adhere to certain rules for the contested hearing:  At the court's discretion, time limits would be imposed on direct and cross-examination, so the parties were to use their time wisely; declarations would be admitted to the extent they did not lack foundation or rest on hearsay; the court would question the parties about their allegations and ask if they rested on their declarations; if one party failed to demonstrate a prima facie case, that party's DVRO request would be dismissed, otherwise the court would allow the parties to continue questioning the witnesses.  Neither party had

questions or objected to these rules or the order of the presentation of evidence. The hearing was subsequently continued to February 16, 2022.

At the continued hearing on February 16, 2022, wife was represented by counsel. The trial court restated its rules for the contested hearing, including the need to develop a prima facie case to avoid dismissal. The court reminded the parties it would first proceed with wife's DVRO request by questioning her. Again, neither party objected.

The court stated it would first hear wife's DVRO request, because she filed first. Wife completed her presentation of evidence and rested. The hearing was then continued to May 2, 2022.

On May 2, 2022, the hearing resumed. The trial court questioned husband, as it did with wife prior to examination by counsel. Husband completed his presentation of evidence and rested. Following argument by counsel, the trial court denied wife's request. The court concluded there was no justification for issuing a DVRO. The court found the text messages did not constitute abuse. Contrary to wife's DVRO request, there was no admissible evidence the messages affected wife medically. The court discounted wife's claim that husband's texts were distressing because, rather than block the messages, she responded to them well after the original text from husband. The court found the parties' texts reflected immaturity and poor communication between parents that required serious intervention. The court ordered the parties to use the

4

TalkingParents app or Our Family Wizard to communicate in the future.[2]

Next was the presentation of evidence for husband's DVRO request. The parties each submitted questions for their two children. The children separately testified in a series of question-and-answer exchanges with the trial court in chambers. The hearing recessed until the following day.

On May 3, 2022, the hearing resumed. The trial court again questioned husband and wife prior to examination by counsel. After husband completed his presentation of evidence, the parties rested. When the hearing concluded, the trial court granted husband's DVRO request. The court concluded wife had abused husband through their children. The court found wife had abused her children by compelling them to falsely report husband as an abuser to authorities. The court believed the children's testimony and disbelieved wife's conflicting testimony. The court ordered sole legal and physical custody of the children be granted to husband. Wife timely appealed.[3]

## DISCUSSION

### I.    Section 6305

Wife first contends the trial court's failure to follow the dictates of section 6305 in assessing the parties' mutual DVPO requests constituted reversible error.

---

[2] TalkingParents and Our Family Wizard are both on-line coparenting communication tools authorized by family courts.

[3] Wife was represented by appellate counsel when her opening brief was filed. She filed her reply brief in propria persona, no longer represented by counsel. Husband represents himself on appeal.

## A.    Governing Law

"Under the DVPA, a court may issue a restraining order to prevent domestic violence or abuse if the party seeking the order 'shows, to the satisfaction the court, reasonable proof of a past act or acts of abuse.' " (*Melissa G. v. Raymond M.* (2018) 27 Cal.App.5th 360, 367.)  "Abuse" means intentionally or recklessly causing or attempting to cause bodily injury to, sexual assault, placing a person in reasonable apprehension of imminent serious bodily injury, attacking, striking, stalking, threatening, battering, harassing, destroying personal property, or disturbing the peace of the other party.  (§§ 6203, 6320; see *K.L. v. R.H.* (2021) 70 Cal.App.5th 965, 977–978.)

The statute at issue here is section 6305, which governs mutual restraining orders.  Under section 6305, a court "shall not issue a mutual order enjoining the parties from specific acts of abuse" unless "(1) [b]oth parties personally appear and each party presents written evidence of abuse or domestic violence" using a mandatory Judicial Council form; and "(2) [t]he court makes detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense."  (§ 6305, subd. (a)(1) & (2).)  In the absence of such factual findings, the order is voidable.  (*Melissa G. v. Raymond M.*, *supra*, 27 Cal.App.5th at p. 368.)  "As used in section 6305, the phrase 'mutual order' may refer to a single order restraining two opposing parties from engaging in the acts of abuse described in section 6320 or two separate orders which together accomplish the same result as a single order." (*Ibid.*)

## B.    Standard of Review

On appeal "[t]he question of whether a trial court applied the correct legal standard to an issue in exercising its discretion

6

is a question of law [citation] requiring de novo review." (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463.) If a trial court applies the wrong legal standard in ruling, we may nonetheless affirm if we determine there is no reasonable probability the court would have reached a more favorable result had it applied the correct standard. (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1504, fn. 11.)

### C. Wife's Contentions

Because the parties' DVPO requests were to be tried together on the same day, wife contends the trial court was required to comply with section 6305. The obvious response to wife's contention is the court never issued a mutual restraining order. In this instance, the court denied wife's DVPO request and granted husband's DVPO request. What's more, if both requests had been granted, we question whether the resulting restraining order would have been "mutual"—given wife was seeking to protect herself solely from husband and husband was seeking to protect himself and his children from wife.

Nonetheless, wife contends because the trial court was presented with what were clearly mutual DVPO requests, it had to apply section 6305 and make the requisite findings. Wife is not challenging the sufficiency of the evidence to support the findings made. Rather she maintains at length the findings made are wrong, because they are based on the court's faulty analysis of the evidence. As *K.L. v. R.H.*, *supra*, 70 Cal.App.5th 965 explained, "[I]n making [the findings required by section 6305] the court 'shall consider' both the intent of the law protecting domestic violence victims and the specific circumstances of the history of domestic violence in the case before it. [Citations.] Specifically, the statute mandates that the

7

court determine which of the parties is the 'most significant' aggressor. [Citation.] Such a determination requires that the acts of the parties be weighed against each other. As a result, in deciding whether mutual restraining orders should issue, the trial court must consider the parties' respective alleged acts of domestic violence in concert, and not separately." (*Id.* at p. 979.) Wife argues here, by having one DVPO request adjudicated after the other rather than trying them together, the court improperly considered the parties' claims and history of abuse separately without weighing them against each other to make its findings. According to wife, this prevented the court from engaging in a thorough evaluation of the parties DVPO requests under section 6305.

### D. No Prejudicial Error

Assuming without deciding the trial court committed the error wife posits, she has not met her burden to show prejudicial error. To establish prejudice, an appellant must demonstrate there was a " ' "reasonable probability that in the absence of . . . error, a result more favorable to the appealing party would have been reached." ' " (*County of Los Angeles v. Williamsburg National Ins. Co.* (2015) 235 Cal.App.4th 944, 955.)

If the court had conducted the hearing as urged by wife, there is no reasonable probability the court would have granted her DVPO request and denied husband's DVPO request. The record shows the court did not find wife at all believable. The court expressly discounted her testimony that husband's text messages were abusive and that she did not pressure her children to falsely claim husband was abusive. In terms of her children, the court told wife: "But the bottom line is this. I believe that, in fact, you are saying [husband is a sexual abuser]

8

to the children because I believe the children.  I believe what they're saying.  I believe your daughter saying that you're always talking about [husband].  And therefore, you're using those children and causing them [to lie]—their problem is you."  As wife's discredited testimony was the linchpin of both DVPO requests, she would not have benefited from a more favorable outcome had the requests been tried jointly.

## II.    Due Process Claim

Wife asserts the trial court so restricted both the time and manner of the presentation of evidence that it amounted to a denial of her due process rights.

### A.    Standard of Review

"We independently review due process claims 'because "the ultimate determination of procedural fairness amounts to a question of law." ' "  (*Roth v. Jelley* (2020) 45 Cal.App.5th 655, 666.)

### B.    Wife Forfeited Her Claim

"Trial courts have 'substantial discretion in the conduct of judicial business,' which includes the inherent power to control the litigation before them.  [Citation.]  ' " 'That inherent power entitles trial courts to exercise reasonable control over all proceedings connected with pending litigation . . . in order to insure the orderly administration of justice.' " '  [Citation.]  '[O]ne important element of a court's inherent judicial authority in this regard is "the power . . . to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." ' "  (*People v. Cota* (2023) 97 Cal.App.5th 318, 333.)

At the outset, this trial court told the parties how it conducted hearings on DVPO requests.  The court advised it

9

would impose time limits and examine witnesses if deemed necessary. The court e-mailed these instructions to the parties and repeated them during the hearing. The court's clear intent was to manage its heavy docket by making sure the proceedings before it would be orderly and efficient. At no time did the parties or their attorneys object to any instructions or the way in which the hearing was being conducted. Wife has forfeited her due process claim by failing to raise it in the trial court. (See *People v. Cardona* (2009) 177 Cal.App.4th 516, 523 ["We further conclude appellant forfeited any due process claim by failing either to raise it, or to object to the procedures used, in the trial court"].)

### C.    No Due Process Violation

Wife makes conclusory assertions the trial court violated her due process rights. From the cases wife cites in her opening brief, it appears she first contends the trial court improperly questioned witnesses before allowing the attorneys to question them. "A trial judge may examine witnesses to elicit or clarify testimony [citations]. Indeed, 'it is the right and duty of a judge to conduct a trial in such a manner that the truth will be established in accordance with the rules of evidence.' " (*People v. Rigney* (1961) 55 Cal.2d 236, 241.) Here, the trial court examined the witnesses to elicit testimony in an organized fashion. We also note that, not infrequently, counsel had difficulty formulating questions to elicit certain testimony. At that point, the trial court would intervene to rephrase the question and the witness was able to answer. Our independent review of the record confirms the court's examination was proper and did not hinder the parties' ability to present their cases.

10

Wife also maintains the trial court was impatient and unfairly limited the parties' time. The court was frustrated or critical of counsel. This occurred chiefly when counsel ignored an admonishment by the court, interrupted the court posed ambiguous questions to witnesses, misnumbered or misplaced documentary evidence or repeatedly failed to respond directly to the court's questions. After reviewing the record, we conclude the court's comments did not rise to such a level that they cause us to lack confidence in the fairness of the proceedings. (*People v. Snow* (2003) 30 Cal.4th 43, 78 [" '[i]t is well within [a trial court's] discretion to rebuke an attorney, sometimes harshly, when that attorney asks inappropriate questions, ignores the court's instructions, or otherwise engages in improper or delaying behavior' "].)

Nor did the trial court unfairly limit the parties' time to present their DVPO requests. The hearing lasted four days. Wife had adequate time to present evidence and to provide a defense. She points to nothing in the record that suggests otherwise.

Lastly, wife's contention the trial court prejudged the evidence has no merit. The court was the finder of fact. There was nothing improper about the court communicating its thoughts to the parties to guide them in the presentation of evidence so their issues could be fully addressed and fairly resolved.

In sum, the court did not violate wife's due process rights.

## DISPOSITION

The order is affirmed.  Fang Huang is to recover his costs on appeal.

NOT TO BE PUBLISHED.


                                        LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.